UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
IN RE GENZYME CORPORATION          )
SHAREHOLDER LITIGATION              )
                                                )        Master Docket No. 10-cv-11356
_____)


REPORT AND RECOMMENDATION ON
PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES AND DEFENDANTS'
CROSS-MOTION FOR AN APPROPRIATE SANCTION UNDER THE PSLRA

[Docket Nos. 46, 52]

September 13, 2011

Boal, M.J.

The Plaintiffs filed a consolidated shareholder class action that alleges breaches of

fiduciary duty and federal securities laws by Genzyme Corporation ("Genzyme") and its

directors (collectively referred to herein as "Defendants") in relation to Genzyme's potential

acquisition by sanofi-aventis, S.A. ("Sanofi").  Sanofi eventually completed the acquisition and

the parties agreed that the Plaintiffs' substantive claims are now moot.  See Docket No. 43.

Plaintiffs now seek fees on behalf of the six law firms that represented them.  See Docket No. 46.

Claiming that Plaintiffs' counsel have done nothing more than file multiple complaints and then

wait, Defendants oppose the motion and move for sanctions under the Private Securities

Litigation Reform Act ("PSLRA").  See Docket No. 52.  For the reasons detailed below, this

Court recommends that the District Court DENY both motions.

I.      **Factual and Procedural History**

On July 29, 2010, Sanofi made an unsolicited proposal to acquire Genzyme at $69 per share.  Amended Shareholder Class Action Complaint ("ACC") ¶ 49, Docket No. 34.  On August 10, 2010, Genzyme's Board of Directors unanimously rejected Sanofi's proposal.  Memorandum of Law in Opposition to Plaintiffs' Counsel's Motion for An Award of Attorneys' Fees and in Support of Defendants' Cross-Motion ("Def.'s Opp."), p. 4 [Docket No. 50]; Genzyme Corp., Schedule 14D-9[1] (Oct. 7, 2010) at 22.[2]

On August 11, 2010, the Jerry L. & Mena M. Morelos Revocable Trust filed a shareholder class action complaint in this district against Sanofi,[3] Genzyme, and its directors, alleging a breach of breach of fiduciary duty by the individual defendants and aiding and abetting the breach of fiduciary duty by the corporate defendants for *accepting* Sanofi's offer of $69 per share.  <u>See</u> <u>Jerry L. & Mena M. Morelos Revocable Trust v. Termeer</u>, 10-cv-11356.  The complaint sought an injunction preventing the merger or a rescission of the merger.

On August 29, 2010, Sanofi made public its offer to Genzyme.  ACC, ¶50.  On August 30, 2010, Genzyme again rejected the proposal.  ACC, ¶51; Schedule 14D-9 at 25.  In

---

[1]  The Court may take judicial notice of documents publicly filed with the United States Securities and Exchange Commission ("SEC").  <u>See</u> <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991).

[2]  The Schedule 14D-9 is available at http://www.sec.gov/Archives/edgar/data/732485/000104746910008489/a2200413zsc14d9.htm.

[3]  On October 12, 2010, the Jerry L. & Mena M. Morelos Revocable Trust filed a notice of voluntary dismissal of its claims against Sanofi pursuant to Fed. R. Civ. P. 41(a)(1).  Docket No. 24.

September, three additional plaintiffs filed separate shareholder class actions in this district[4]

alleging a breach of fiduciary duty by Genzyme and its directors for rejecting Sanofi's offer and

seeking a court order that Genzyme maximize shareholder value.[5]

On October 4, 2010, Sanofi presented a tender offer directly to Genzyme's shareholders

at $69 per share. ACC, ¶¶6, 58; Oddo Decl., ¶6 [Docket No. 48].  On October 7, 2010, Genzyme

filed a Schedule 14D-9[6] with the SEC, advising shareholders not to tender their shares to Sanofi.

Schedule 14D-9; ACC, ¶¶7, 60; Oddo Decl., ¶7.  As the basis for its refusal, Genzyme stated:

> The Offer is based on financial terms identical to those in the two prior
> unsolicited proposals submitted by Sanofi, which the Company Board previously
> rejected. The Company Board remains unanimously resolute in its belief that the
> $69.00 per Share Offer Price continues to be inadequate and opportunistic, fails to
> recognize the Company's plan for substantial value creation, substantially
> undervalues the Company relative to its intrinsic value and is not in the best

---

[4]   Specifically, on September 8, 2010, Bernard Malina filed a shareholder class action
under Mass R. Civ. P. 23 seeking an injunction, damages, and attorneys' fees. See Malina v.
Genzyme Corp., 10-cv-11532.  On September 9, 2010, Emaneul Resendes filed a shareholder
class action seeking an injunction, damages, and attorneys' fees.  See Resendes v. Termeer, 10-
cv-11536.  On September 14, 2010, William S. Field, III filed a shareholder class action seeking
an injunction appointing an independent special committee to review offers, compensatory
damages based on dimunition in stock value, and attorneys' fees.  See Field v. Termeer, 10-cv-
11565.  Because these actions are all now consolidated, the plaintiffs in these actions are
collectively referred to herein as "Plaintiffs."

[5]   Other plaintiffs filed four actions in Massachusetts Superior Court.  See, e.g., Chester
Cnty. Emps. Ret. Fund v. Genzyme Corp., No. MICV2010-03065/SUCV2010-03777, (filed in
Middlesex Super. Ct. Aug. 16, 2010, transferred to Business Litigation Session in Suffolk
County); Kahn v. Termeer, No. MICV2010-03067 (filed in Middlesex Super. Ct. Aug. 17,
2010); Shade v. Genzyme Corp., No. MICV2010-03276 (filed in Middlesex Super. Ct. Aug. 31,
2010); La. Mun. Police Emps.' Ret. Sys. v. Termeer, No. MICV2010-03327 (filed in Middlesex
Super. Ct. Sept. 2, 2010).

[6]   A Schedule 14D-9, Solicitation/Recommendation Statement, is submitted pursuant to
Rule 14e-2.  See 17 C.F.R. § 240.14e-2 ("[T]he subject company [of a tender offer], no
later than 10 business days from the date the tender offer is first published or sent or given, shall
publish, send or give to security holders a statement disclosing that the subject company . . .
[r]ecommends acceptance or rejection of the bidder's tender offer. . . .").

interests of Genzyme or its shareholders.

ACC, ¶60; Schedule 14D-9 at 29.  Genzyme also stated that the offer did not reflect the intrinsic

value of the company as represented in the financial opinions of Goldman Sachs and Credit

Suisse.  Id.; Schedule 14D-9 at 32.

On December 10, 2010, Plaintiffs sent Defendants a letter, "for settlement purposes

only"[7] that suggested actions that Defendants could take to resolve Plaintiffs' claims (the

"December 2010 Letter").  Oddo Decl., ¶8; Forter Decl., Ex. A.  The letter suggested that

Defendants: (1) agree to enter into a confidentiality agreement so that Sanofi could conduct due

diligence and Genzyme could engage Sanofi in meaningful negotiations; (2) conduct a "market

check" to determine whether any other parties were interested in acquiring the company at a

higher price than Sanofi; (3) disclose to shareholders all material information regarding the

company's work and how it assessed Sanofi's offer; and (4) confirm that Genzyme would "cease

consideration and/or implementation of any defensive measures intended to thwart or discourage

Sanofi from pursuing its offer."  Forter Decl., Ex. A.

On December 13, 2010, Sanofi amended its tender offer and extended its deadline for

tendering shares to January 21, 2011.  ACC, ¶73; Sanofi-Aventis, Schedule TO/A (Dec. 13,

2010).[8]  At that time, Sanofi disclosed that less than two percent of outstanding Genzyme shares

had been tendered at the $69 per share offer price.  Id.  The filing also noted, however, that

"representatives of Evercore Partners and J.P. Morgan, [Sanofi's] financial advisors, and

---

[7] Although the letter states that it is for settlement purposes only, Plaintiffs base their
fees motion in part on the effect of this letter, which was required under L.R. 16.1(C).

[8] The amended tender offer is available at http://www.sec.gov/Archives/edgar/data/
732485/000119312510278879/dsctota.htm.

4

representatives of Credit Suisse and Goldman Sachs, Genzyme's financial advisors, have met to discuss the differences between [Sanofi's] and Genzyme's perspectives with respect to the value of Genzyme. These discussions have focused on using a potential contingent value right relating to [a drug] for treatment of multiple sclerosis to be part of any potential resolution of differences with respect to value . . ." Id.; ACC, ¶74.

On December 29, 2010, the Court consolidated the separate class actions upon Plaintiffs' motion.  Docket December 29, 2010.

On January 10, 2011, Genzyme further disclosed that discussions between the parties had "expanded beyond the respective financial advisors to include, among others, representatives from both companies."  Def.'s Opp., p. 9 n. 17; Schedule 14D-9/A (Jan. 10, 2011).[9]  The discussions "focused on potential terms for a negotiated transaction and have included the possible use of a contingent value right relating to [a drug] as part of any potential resolution of differences with respect to value."  Id.

On January 18, 2011, Plaintiffs filed the amended shareholder class action complaint, which added allegations that Defendants had violated Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 in connection with Genzyme's submission of the Schedule 14D-9.  See ACC; Oddo Decl., ¶9.  Specifically, the ACC alleges that the Schedule 14D-9 contained material misrepresentations and did not contain sufficient information for shareholders to adequately assess Genzyme's decision to reject Sanofi's offer.  ACC, ¶¶81-89.

On January 31, 2011, Genzyme disclosed that it had entered into a confidentiality

---

[9]  The January 10, 2011 Schedule 14D-9/A is available at http://www.sec.gov/ Archives/edgar /data/732485/000095012311001646/b84237sc14d9za.htm.

agreement "in order to allow Sanofi to conduct due diligence with regard to the Company."
Def.'s Opp., p. 10; Memorandum of Law in Support of Motion for Award of Attorneys' Fee
("Pl.'s Memo."), p. 6 [Docket No. 47]; Schedule 14D-9/A (Jan. 31, 2011).[10]  As a result of the
confidentiality agreement, Sanofi was provided with non-public information concerning the
Company.  Id.

On February 16, 2011, Defendants moved to dismiss the ACC for failure to state a claim
upon which relief could be granted.  Docket No. 35.  On February 28, 2011, Plaintiffs sought a
three-week extension of time until March 22, 2011 to respond to the motion to dismiss.  Docket
No. 37.  On March 22, 2011, Plaintiffs sought leave to file a Second Amended Complaint,
stating that many of the ACC's allegations had been mooted by Defendants' actions.  Docket
Nos. 38, 39 at p. 2.  Plaintiffs' proposed Second Amended Shareholder Class Action Complaint
continued to challenge Genzyme's dealings with Sanofi and added an aiding and abetting claim
against Sanofi.

On February 16, 2011, Genzyme entered into an Agreement and Plan of Merger with
Sanofi, pursuant to which Sanofi agreed to amend its previously outstanding tender offer to
provide for the purchase of all of the issued and outstanding shares of Genzyme common stock
in exchange for (a) $74.00 in cash, and (b) one contingent value right ("CVR")[11] per share of
Genzyme stock.  Docket No. 41.

_____

[10]  The January 31, 2011 Schedule 14D-9/A is available at http://www.sec.gov/
Archives/edgar/data/732485/000095012311006949/b84620sc14d9za.htm.

[11]  Genzyme shareholders were to receive a certain amount of money per CVR if the
company achieved certain milestones.  Pl.'s Memo., p. 1.

On March 31, 2011, the parties entered into a stipulation whereby Plaintiffs withdrew their motion for leave to file an amended complaint.  Id.  On April 7, 2011, the Court entered an order denying, without prejudice, the motion for leave to file an amended complaint on the grounds that such motion was moot due to the terms of the stipulation and stated that it would stay its issuance of a report and recommendation on Defendants' motion to dismiss.  Docket April 7, 2011.

On April 8, 2011, Genzyme filed a Form 8-K[12] with the SEC announcing completion of the acquisition.  Pl.'s Memo., p. 7; Oddo Decl., ¶13; Genzyme Corp., Form 8-K (April 8, 2011).[13]  The Form 8-K stated that approximately 89.4% of the issued and outstanding shares of Genzyme were properly tendered pursuant to the Merger Agreement and, following the subsequent short-form merger, Genzyme became a wholly-owned subsidiary of Sanofi. Oddo Decl., ¶13; Form 8-K, at 2.

On April 21, 2011, the parties filed a Joint Status Report with this Court.  Docket No. 43. The parties stated that the claims in the ACC were moot and that Plaintiffs intended to file a notice of voluntary dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(1).  Id.

On May 6, Plaintiffs filed their motion for attorneys fees and expenses. Docket Nos.  46, 47.  On June 6, 2011, Defendants opposed the motion and moved for sanctions under the

---

[12]  "In addition to filing annual reports on Form 10-K and quarterly reports on Form 10-Q, public companies must report certain material corporate events on a more current basis. Form 8-K is the 'current report' companies must file with the SEC to announce major events that shareholders should know about."  Information from the U.S. Securities and Exchange Commission, http://www.sec.gov/answers/form8k.htm.

[13]  The Form 8-K is available at http://www.sec.gov/Archives/edgar/data/732485/ 000095012311034216/b85960e8vk.htm.

PSLRA.  Docket Nos. 50, 52.  The Court heard oral argument on August 10, 2011.

On August 17, 2011, Plaintiffs filed a motion for voluntary dismissal.  Docket No. 61.
The Court recommended that the District Court treat Plaintiffs' motion as a notice of voluntary
dismissal, deny Plaintiffs' motion as unnecessary, and deny Defendants' motion to dismiss the
complaint as moot.  Docket No. 64.

**II.     Analysis**

A.     Plaintiffs' Request For Attorneys' Fees

Plaintiffs argue that they are entitled to attorneys' fees because the Defendants took
corrective action following the filing of the instant case.  Pl.'s Memo., p. 1.  Specifically,
Plaintiffs argue that when a defendant board of directors takes corrective action following a
shareholder's challenge to their conduct, and such action moots the shareholder's claims, counsel
for those plaintiffs are entitled to recover reasonable attorneys' fees and expenses for their role in
helping produce the benefit to the company's shareholders.  Id.  Citing Delaware law
extensively, Plaintiffs argue that their counsel are entitled to recover $975,000 in attorneys' fees
(approximately two times their collective lodestar of $454,828.50) for over a thousand hours of
work because they can demonstrate that (i) their claims were meritorious when filed; (ii) a
benefit resulted to the class or corporation prior to judgment on the merits; and (iii) some causal
connection exists between the lawsuit and the benefit.  Pl.'s Memo., p. 2-4.  Defendants argue
that Massachusetts law does not provide such relief and that, even if it did, Plaintiffs have not
established that their litigation caused Genzyme's actions.  Def.'s Opp., p. 1.  For the reasons
detailed below, this Court recommends that the District Court deny Plaintiffs' motion for
attorneys' fees.

1.      Massachusetts Law

The American Rule generally prohibits the imposition of attorneys' fees on an opposing party.  See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975).  However, under Massachusetts common law,[14] attorneys' fees may be awarded, in the court's discretion, to a party who has successfully brought a derivative action on behalf of a corporation.  Coggins v. New England Patriots Football Club, Inc., 406 Mass. 666, 669 (1990) ("Attorneys' fees may be awarded, in the judge's discretion, to a party who has successfully brought a derivative action on behalf of a corporation, but 'no recovery may be had for counsel fees in the very action to redress a plaintiff's wrong.'" (citations omitted)).  The basis for such an award of attorneys' fees is that "an expense incurred by one, resulting in the creation of a fund for the general benefit of many other persons, ought not to be borne entirely by the one whose action has resulted in the realization of such a fund, and that it is equitable that a part of the expense should be paid out of the fund."  Shaw v. Harding, 306 Mass. 441, 450 (1940); see also Comm'r of Ins. v. Mass. Accident Co., 318 Mass. 238, 242-5 (1945); Pearson v. Chicopee, 402 Mass. 797, 801 n. 3 (1988).  Such an award is discretionary and not a matter of strict right.  Comm'r of Ins., 318 Mass. at 243.  Under Massachusetts law, such attorneys' fees are only paid from the common fund created by the action.  If an action does not create a common fund, a court will not award attorneys' fees.  See Shaw, 306 Mass. at 450-1; Comm'r of Ins., 318 Mass. at 242-5; Pearson , 402 Mass. at 801 n. 3; Coggins, 406 Mass. at 669.

Citing Delaware law, Plaintiffs state that a common fund is not necessary and that their

---

[14]  An award of attorneys' fees is generally governed by state law in a diversity action.  Alyeska Pipeline Serv. Co., 421 U.S. at 260 n. 31.  Because Genzyme is a Massachusetts corporation, the issue of attorneys' fees is governed by Massachusetts law.

counsel can receive fees because their actions conferred a substantial benefit on the class.  Pl.'s Memo., p. 9-10.  Although "instructive," Delaware case law is not binding.  <u>Piemonte v. New Bos. Garden Corp.</u>, 377 Mass. 719, 726 (1979).  The Massachusetts Supreme Judicial Court has not explicitly adopted an additional equitable basis for payment when an action does not create a common fund but confers a substantial benefit on a class of individuals.  <u>Martin v. Payne</u>, 409 Mass. 753, 759 n. 4 (1991).

Plaintiffs' citation to <u>In re Amicas, Inc. Shareholder Litigation</u>, No. 10-174, 2010 WL 5557444, *2 (Mass. Super. December 6, 2010) is unavailing.  Pl.'s Memo., p. 20.  In <u>Amicas</u>, the Superior Court found that the plaintiffs conferred a substantial benefit upon the class because it caused an increase in shareholder value related to a cash tender offer, thereby creating a $26M "fund."  In that case, however, the plaintiffs took expedited discovery and obtained a preliminary injunction.  Further, the parties agreed that a common fund existed and that the attorneys' fees would be paid by the defendants, and not out of the fund.  <u>Id.</u> at *3 n. 1.  Such is not the case here.

Massachusetts law typically requires that attorneys' fees be paid from a common fund created by the action.  Because Plaintiffs did not create a common fund, they cannot receive their attorneys' fees and therefore this Court recommends their request for attorneys' fees be denied.

2.      Causation

Even assuming that Massachusetts law would provide for an award of attorneys' fees in the absence of a common fund, Plaintiffs cannot establish that they actually caused Defendants' actions.

Plaintiffs argue that the chronology of the instant litigation supports their argument that

10

their actions caused Genzyme to negotiate with Sanofi.  Pl.'s Memo., p. 20.  Plaintiffs point to the close temporal proximity between their December 2010 letter, the ACC, and Defendants' decision to negotiate with Sanofi.  Id. at 21.  Citing Delaware law, Plaintiffs also argue that there is a rebuttable presumption that their lawsuit caused Defendants' corrective action.  Id. at 20.

As an initial matter, Plaintiffs recognize that Massachusetts has not adopted the rebuttable presumption.  Id.  In fact, Massachusetts law presumes that a company's directors act in the best interests of the corporation.  See Harhen v. Brown, 431 Mass. 838, 845 (2000).  Thus, Plaintiffs are left with the chronology of the instant case in which they did not take discovery, file a preliminary injunction, oppose Defendants' motion to dismiss, or engage in meaningful settlement negotiations.  Therefore, Plaintiffs seek close to a million dollars in fees[15] for over a thousand hours of work for simply filing complaints and sending a letter that was required by the Federal Rules.  The chronology in this case is simply insufficient to support Plaintiffs' causation argument and therefore this Court recommends their request for attorneys' fees be denied.

B.      Defendants' Cross-motion For Sanctions Under PSLRA

Defendants argue that the Court should sanction Plaintiffs and award Defendants the cost of their defense under 15 U.S.C. § 78u-4(c) of the PSLRA.  Def's Opp., p. 30-34.  Section 78u-

---

[15]  Plaintiffs did not submit the appropriate supporting documentation with their fee motion, such as contemporaneous time and billing records and information establishing the usual and customary rates in the marketplace for comparably credentialed counsel.  See Spooner v. EEN, Inc., 644 F.3d 62, 68 (1st Cir. 2011).  Plaintiffs simply submitted a chart that listed the total amount of hours worked per firm and a total lodestar amount, in addition to some supporting documentation about the attorneys' qualifications.  See Oddo Decl., ¶ 26 and Exhibit A.  The chart included a $22,000 lodestar amount for one law firm even though the total hours worked was listed as "N/A."  Id.  Although the Court need not reach this issue in order to decide the instant motion, the billing records' lack of specificity could, in and of itself, form a separate basis for denying Plaintiffs' fee request.  See Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984).

4(c) requires a court to make findings regarding each attorney and party's compliance with Rule

11(b) in actions arising under the PSLRA.[16]  Specifically, Section 78u-4(c) states:

> In any private action arising under this chapter, upon final adjudication of the
> action, the court shall include in the record specific findings regarding compliance
> by each party and each attorney representing any party with each requirement of
> Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint,
> responsive pleading, or dispositive motion.

15 U.S.C. § 78u-4(c).

Unlike Rule 11 motions for sanctions, Section 78u-4(c) does not provide a safe harbor

provision that allows a party to withdraw a motion after receiving a Rule 11 motion for

sanctions.  Congress passed Section 78u-4(c) to give "teeth" to Rule 11 by reducing the courts'

discretion in deciding whether to conduct a Rule 11 inquiry and therefore "reduce significantly

the filing of meritless securities lawsuits without hindering the ability of victims of fraud to

pursue legitimate claims."  Gurary v. Nu-Tech Bio-Med., Inc., 303 F.3d 212, 219 (2d Cir. 2002).

Plaintiffs argue that the Court is not required to make findings under Section 78u-4(c)

because there has been no "final adjudication" as required by the statute.  Plaintiffs'

Memorandum of Law in Opposition to Defendants' Cross-Motion for a Sanctions Under the

PSLRA, p. 3-5.  Docket No. 54.  This Court agrees.

The PSLRA does not define the term "final adjudication" and the First Circuit has not

addressed its meaning.  In the absence of a statutory definition, courts have construed the "final

adjudication" language of  Section 78u-4(c) to mean when a court has issued "a terminating

decision, such as a verdict, summary judgment, or dismissal with prejudice without leave to

---

[16]  Plaintiffs' claims are covered by the PSLRA because the ACC alleges violations of
Sections 20(a) and 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t and 15 U.S.C.
§ 78n(e), respectively.  See 15 U.S.C. § 78-4(b)(1).

amend." <u>DeMarco v. Depotech Corp.</u>, 131 F. Supp. 2d 1185, 1187 (S.D. Cal. 2001).

Consequently, courts have held that a Section 78u-4(c) sanctions review is not necessary after a

plaintiff voluntarily dismisses its case without prejudice.  <u>See</u> <u>Unite Here v. Cintas Corp.</u>, 500 F.

Supp. 2d 332, 337 (S.D.N.Y. 2007); <u>see also</u>, <u>The High View Fund, L.P. v. Hall</u>, 27 F. Supp. 2d

420, 430 n. 7 (S.D.N.Y. 1998) (dismissal with leave to amend does not constitute a final

adjudication); <u>Scone Investments, L.P. v. American Third Market Corp.</u>, No. 97-3802, 1998 U.S.

Dist. LEXIS 5903, *31 n. 3 (S.D.N.Y. April 28, 1998) (same); <u>Blaser v. Bessemer Trust Co.</u>, No.

01-11599, 2002 U.S. Dist. LEXIS 19856, *9-10 (S.D.N.Y. October 21, 2002) (voluntary

dismissal without prejudice not a final adjudication under Section 78u-4(c)); <u>In re: Cross Media</u>

<u>Marketing Corp. Sec. Litigation</u>, 314 F. Supp. 2d 256, 269 (S.D.N.Y. 2004) (dismissal without

prejudice is not a final adjudication); <u>Hilkene v. WD-40 Co.</u>, No. 04-2253, 2007 U.S. Dist.

LEXIS 9360, *5 (D. Kan. February 8, 2007) (dismissal without prejudice is not a final

adjudication).  Because Plaintiffs have voluntarily dismissed their action without prejudice, there

has been no final adjudication, and a Rule 11 finding under the PSLRA is not required.

Defendants argue that allowing Plaintiffs to escape the purview of Section 78u-4(c) with

a voluntary dismissal would work the opposite of Congress' intention in passing the statute.

However, if the Court takes Defendants' argument to its logical conclusion, Section 78u-4(c)

would require a Court to make Rule 11 findings for every action that alleges a federal securities

violation, no matter the extent of the litigation or whether the parties have stipulated to dismissal.

This goes too far.  "If Congress actually intended to saddle [...] courts with this task, it would

have stated so explicitly instead of using the phrase 'final adjudication' as the trigger for the

Rule 11 review." <u>Blaser</u>, 2002 U.S. Dist. LEXIS 19856 at *9-10.  Accordingly, this Court

recommends that Defendants' motions for sanctions under the PSLRA be denied.

## III.   Conclusion

For the foregoing reasons, I recommend that the District Court DENY Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement Expenses, Docket No. 46, and DENY Defendants' Cross-Motion for an Appropriate Sanction Under the PSLRA, Docket No. 52.

## IV.   Review by District Judge

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge